## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS
## CENTRAL DIVISION

| | |
|---|---|
| ALEX M. BALDWIN,<br>125 Cypress Court<br>Hammonton, NJ  08037 ) ) ) | CIVIL ACTION NO.: |
| Plaintiff, ) | |
| v. ) | |
| ) | **JURY TRIAL DEMANDED** |
| HOOLIGANS, INC., d/b/a<br>HOOLIGANS, and its agents,<br>servants, representatives and<br>employees<br>29 Blossom Street<br>Fitchburg, MA  01420 ) ) ) ) ) ) | |
| and ) | |
| ERIKA KIRBY, individually,<br>and as owner and/or operator<br>of HOOLIGANS<br>69 Putnam Park<br>Fitchburg, MA  01420 ) ) ) ) ) | |
| and ) | |
| SEAN DALEY<br>83 Pearl Street<br>Fitchburg, MA  01420 ) ) ) | |
| and ) | |
| ABC CORPORATION I-V and<br>JOHN DOE I-V ) ) ) | |
| All Jointly,Severally, and<br>in the Alternative, ) ) | |
| Defendants. ) | |

## COMPLAINT

For his Complaint against the above-named Defendants, Plaintiff states as follows:

## PARTIES

1.   Plaintiff Alex Baldwin ("Plaintiff") is an adult individual who resides at 125 Cypress Court, Hammonton, New Jersey.

2.   Defendant, Hooligans, Inc., d/b/a Hooligans ("Hooligans"), is a Massachusetts corporation with its principal place of business at 29 Blossom Street, Fitchburg, Massachusetts.

3.   Defendant Erika Kirby, an adult individual residing at 69 Putnam Park, Fitchburg, Massachusetts, is the owner of the premises located at 29 Blossom Street, Fitchburg, Massachusetts, and is also the owner and principal of Hooligans, Inc.

4.   Upon information and belief, Erika Kirby owns said premises personally, or through her corporation, Hooligans, Inc.

5.   Defendant Sean Daley, an adult individual who resides at 83 Pearl Street, Fitchburg, Massachusetts, was employed as a bartender by Erica Kirby and/or Hooligans, Inc. on October 20, 2008.

6.   ABC Corporation I-V and John Doe I-V are corporations and/or individuals unknown to the Plaintiff who own the premises located at 29 Blossom Street, Fitchburg, Massachusetts or exercise ownership or control over Hooligans, Inc.

## JURISDICTION AND VENUE

7.    Jurisdiction is proper under 28 U.S.C. § 1332 by virtue of diversity of citizenship of the parties and the fact that more than $75,000.00 in damages are in controversy in this matter.  Venue is proper in this Court under 28 U.S.C. § 1391 because the defendants reside and/or have places of business in this judicial district, which is also the judicial district in which the events that give rise to the claims occurred.

## FACTS

8.    On October 20, 2008, Plaintiff and a group of friends and fellow students at Fitchburg State College that included Russell Amero (a.k.a. "Rusty"), Rusty's girlfriend Lindsey O'Connell, and Peter Njuguna met at an apartment shared by Amero and Njuguna located on Pearl Street in Fitchburg, Massachusetts.

9.    While at Rusty's apartment, the members of the group socialized and consumed beer and vodka.

10.   Plaintiff, Russell Amero, Lindsey O'Connell and Peter Njuguna left the apartment together, and Lindsey O'Connell drove them to Hooligans, a local college bar located at 29 Blossom Street in Fitchburg, Massachusetts.

11.   The group arrived at Hooligans at or about 8:15 p.m. in order to watch a New England Patriots football game that was broadcast on Monday Night Football, a live television broadcast of the National Football League on the ESPN cable network, which

began at 8:30 p.m. Eastern Standard Time and ended at or around 11:30 p.m.

12.   Corey Crocket, a mutual friend and fellow student at Fitchburg State College walked to Hooligans from his campus apartment and joined the group at about 9:00 p.m.  An Affidavit of Corey Crockett pursuant to Mass. G.L. 231, § 60J is filed herewith as **EXHIBIT 1** and incorporated herein by reference.

13.   Hooligans is a local tavern frequented by Fitchburg State College students and within walking distance from campus.

14.   The interior of Hooligans was dilapidated; the ceiling was peeling and the walls and floor were in poor condition.  The men's restroom – a one-person bathroom with a toilet and sink – was typically filthy and its floor was often covered with urine by evening's end.

15.   The bar divides the tavern into two distinct areas, a smaller area near the entrance with a row of seats along the length of the bar, and a larger back room with chairs set up along the length of the opposite bar countertop, a seating area with tables and chairs, a pool table, and three dart boards.

16.   The interior of the tavern is set up so that a single bartender can observe and service each of the two areas.

17.   Hooligans did not offer a menu or prepare or serve food of any kind.

18.   Hooligans did not accept any method of payment for the beer and liquor it sold except cash.

19.   Upon information and belief, Hooligans had no written, systematic, computerized or recorded method of tracking the point of sale or number of drinks ordered and consumed by patrons, and does not maintain such records.

20.   Upon information and belief, Hooligans has no method for generating a proper receipt for customers.

21.   Hooligans regularly and habitually serves excessive amounts of alcohol to its patrons who are mostly college students.

22.   Upon information and belief, Hooligans patrons are regularly and habitually served alcohol after they are clearly and visibly intoxicated.

23.   Upon information and belief, Hooligans is a place that is regularly patrolled by police due to the large number of intoxicated young persons there, and because fights and other alcohol-related disturbances there are recurrent.

24.   On the evening of October 20, 2008, Hooligans had one bartender on duty, Sean Daley, who was an employee of Erika Kirby and/or Hooligans, Inc.

25.   Sean Daley attended classes at Fitchburg State College and on October 20, 2008 was 27 years old.

26.   Sean Daley was acquainted with Russell Amero, Corey Crockett, and Alex Baldwin.  Sean Daley knew Lindsey O'Connell as "Rusty's girlfriend."

27.   On the evening of October 20, 2008, Hooligans had only a small number of patrons, less than about ten individuals throughout the entire evening.

28.   In part due to the small crowd, Sean Daley was able to see and observe all of the patrons in the bar throughout the evening.

29.   While at Hooligans, Plaintiff along with Russell Amero, Corey Crockett and Peter Njuguna shared at least eight pitchers of beer and had at least two rounds of the dollar shot special called, "Hot Sex."

30.   Sean Daley served Lindsey O'Connell at least three mixed drinks known as White Russians.

31.   A White Russian is a sweet cocktail made with vodka and coffee liqueur (usually Kahlua).  It is typically served in a six to eight ounce short Old Fashion or rocks glass filled with ice, and finished with a cream, milk, or half and half float.  Most recipes contain a minimum of 1 1/2 ounces of 80 proof vodka, and 1 to 1 1/2 ounces of 40 proof coffee liqueur.

32.   The first two White Russians served to and consumed by Lindsey O'Connell were served to her in a pint-sized, 16-ounce beer glass.

33.   A White Russian served in a 16-ounce beer glass would constitute a "double" or a drink with at least twice the amount of alcohol as a normal or typical White Russian.

34.   The third White Russian served to Lindsey O'Connell was in a smaller, regular-sized glass.  It was served to her at or near the very end of the football game, which ended at about 11:30 p.m.

35.   The total amount of alcohol served to Lindsey O'Connell in the three drinks combined is believed to have been at least 7 1/2 ounces of 80 proof vodka and 5 to 5 1/2 ounces of 40 proof coffee liqueur, or the equivalent of about 8.2 standard drinks.  An Affidavit of Fred Del Marva, PI, PPO pursuant to Mass. G.L. 231, § 60J is filed herewith as **EXHIBIT 2** and incorporated herein by reference.

36.   An individual of Lindsey O'Connell's weight who consumed the amounts of alcohol reported would have reached a blood alcohol level of 0.28% at about 12:30 a.m.  An Affidavit of Richard Saferstein, Ph.D. pursuant to Mass. G.L. 231, § 60J is filed herewith as **EXHIBIT 3** and incorporated herein by reference.

37.   From approximately 9:45 p.m., Lindsey O'Connell would have necessarily exhibited increasing physical manifestations and the unmistakable signs of alcohol intoxication.  Most apparent would have been a significant deterioration in Ms.

O'Connell's muscular coordination that would have resulted in poor body coordination and balance.

38.   An unsteady gait, poor balance, slow and uncertain hand movements, and possible slurred speech are commonly the most obvious behavioral changes in intoxicated persons experiencing the blood alcohol levels of Lindsey O'Connell.

39.   In this state of intoxication, Ms. O'Connell's condition would have been obvious to individuals who came in contact with her at Hooligans.  A reasonably trained and reasonably perceptive server would have been able to observe Lindsey O'Connell's visible state of intoxication.

40.   Under these circumstances, Lindsey O'Connell should not have been served or provided with any alcoholic beverages after approximately 9:45 p.m.  By serving Lindsey O'Connell a third White Russian after that time, Sean Daley clearly committed a negligent act when he served alcohol to a visibly intoxicated person.

41.   During the course of the evening, Plaintiff got into a loud verbal argument with another patron at Hooligans because Plaintiff was wearing a New York Yankees baseball hat and the man was a Boston Red Sox fan.  The argument was described as "not friendly" and made others at the bar uncomfortable.

42.   This behavior is consistent with the typical signs of alcohol intoxication and serves to corroborate the adverse

impact that alcohol was having on Plaintiff earlier in the
evening.

43.   Toward the end of the evening, Lindsey O'Connell
offered to drive Corey Crockett back to his campus apartment,
but he refused because "she appeared to be intoxicated" and "it
was only a short walk back to campus anyway."

44.   Peter Njuguna recalled that by the end of the evening
everyone in the group was a little drunk, "buzzed."

45.   Russell Amero and his girlfriend Lindsey O'Connell
left Hooligans together between about 11:30 p.m. and
approximately 11:51 p.m., the time of her motor vehicle
accident.

46.   Sean Daley observed Lindsey O'Connell as she was
leaving Hooligans.  He saw that Lindsey had car keys in her hand
and heard her ask one or more of the others whether they wanted
a ride.

47.   At about the same time that Russell Amero and Lindsey
O'Connell left Hooligans, Plaintiff walked outside the bar to
smoke a cigarette while he waited for Crockett and Njuguna to
finish their game of pool.

48.   Lindsey O'Connell drove her car from the Hooligans
parking lot behind the bar and made a right hand turn onto
Blossom Street.  Russell Amero was a passenger in the car.

49.   Plaintiff walked out into the middle of the road as the car approached.  Lindsey O'Connell encountered Plaintiff somewhere near the entrance to Hooligans.

50.   Lindsey O'Connell slowed or stopped her car and Plaintiff then jumped onto the hood of the car.

51.   Lindsey O'Connell then continued to drive her car a distance of about 200 feet on Blossom Street with Plaintiff kneeling on the hood of her car.

52.   Plaintiff began to slip and lose his balance and Lindsey O'Connell reacted by hitting her brakes, which caused Plaintiff to fall from the vehicle and forcefully hit his head on the pavement.

53.   Russell Amero exited the vehicle and saw that the Plaintiff was severely injured and bleeding from the head.  He yelled at Lindsey O'Connell and told her to leave the scene because he "didn't want her to get in trouble."

54.   Lindsey O'Connell fled the scene of the accident.  She later stated that she fled the accident scene because she "was afraid" she "would get a DUI."

55.   An individual of Lindsey O'Connell's weight who consumed the amounts of alcohol reported would have reached a blood alcohol level of approximately 0.23% at about 11:51 p.m., the time of the motor vehicle accident.  This is nearly three

times the legal limit of 0.08% for operation of a motor vehicle in Massachusetts.

56.   The behavior of Plaintiff and Lindsey O'Connell as described in the preceding paragraphs is consistent with the typical signs and effects of alcohol intoxication, which include a deterioration of judgment, self control and sense of caution, poor balance and body coordination, increased reaction or response times, and a noticeable impact on an individual's ability to respond to a sudden, unexpected occurrence.   The behaviors and observations of Plaintiff and Lindsey O'Connell as described serve to corroborate the adverse impact that alcohol was having on them at the time of the accident.

57.   Russell Amero called 911 emergency services.   When the police arrived, they found Plaintiff face down in a pool of blood.   Russell Amero then intentionally misled the police by falsely telling Officers Pennetti and McNamara that he and Plaintiff were walking home from Hooligans and that the Plaintiff was "hit by a car" that "took off."

58.   Both Officer Pennetti and Officer McNamara noted that Russell Amero "stunk of alcohol," had a "strong odor of alcohol on his breath."

59.   According to Officer McNamara, Russell Amero became loud, angry and belligerent at the scene, verbally assaulting the officers and demanding to know why he was being questioned.

11

60.  On the evening of the accident, Officer Pennetti
questioned Sean Daley about the evening events and showed him a
photograph of Plaintiff.  Daley stated that Plaintiff was in the
bar earlier that night with "some friends," and said that he
served them "a few pitchers of beer."  Daley stated that as soon
as the football game ended Plaintiff and "some other guy" left
Hooligans, and that was the last he saw of him.  Daley
specifically omitted any mention of Lindsey O'Connell, who had
fled the accident scene, or of serving the group White Russians,
mixed drinks or shots.

61.  It was not until October 23, 2008 that Fitchburg
Police learned that Lindsey O'Connell was the driver involved in
this motor vehicle accident.

62.  Plaintiff sustained serious and permanent injuries,
including traumatic brain injury, as a result of the accident
described herein.  Plaintiff's Affidavit pursuant to Mass. G.L.
231, § 60J is filed herewith as **EXHIBIT 4** and incorporated
herein by reference.

63.  Shortly after the accident, Plaintiff was transported
to UMASS Medical Center for medical treatment.  There, at
approximately 1:37 a.m., a blood sample was drawn from Plaintiff
for toxicological analysis.  Subsequent analysis of this sample
by the UMASS Medical Center Laboratory showed it to have a serum

alcohol concentration of 107mg/dL.  This value is equivalent to a whole blood alcohol concentration of approximately 0.09%.

64.  According to Officer Antonio F. Pennetti's Supplemental Narrative Report, as the paramedics were putting Plaintiff into the ambulance, he "began to vomit all over himself and the paramedics."  Plaintiff then "began to thrash around and attempted to pull off his neck collar.  It took a while before the paramedics could subdue and transport Plaintiff.

65.  The Fitchburg E.M.S. Record of Ambulance Service describes Plaintiff's "excessive vomiting" and also indicates that prior to placing Plaintiff in the ambulance, the paramedics started intravenous fluids (IV), normal saline (NS).

66.  While it is not possible to accurately quantify their effects, Plaintiff's vomiting, and dilution of blood with intravenous fluids means that his 0.09% blood alcohol concentration, tested 1 hour and 46 minutes after the time of the accident, likely underreports his degree of intoxication at the time of the accident, and likely underreports the amount of alcohol served to and consumed by Plaintiff.

67.  An individual exhibiting a blood alcohol level of 0.09% is to be considered in an impaired state of alcohol intoxication.  At this level of intoxication, a person will normally experience motor impairments such as staggering walk,

unsteady balance, and significant deterioration in muscular coordination.  Increased reaction or response times will also be exhibited by such an individual.  Under these circumstances, an individual will experience difficulties with hand-to-eye and foot-to-eye coordination.  These deficiencies will noticeably impact on an individual's ability to respond to a sudden, unexpected occurrence.  A significant deterioration of judgment and self-control is to be expected with the result being a diminution in one's normal sense of caution and self-restraint. Such an individual normally exhibits a false sense of self-confidence in one's behavioral pattern.  An individual so influenced becomes a safety risk, taking chances he would normally bypass if he were alcohol-free.  Furthermore, a blood alcohol concentration of 0.09% will also adversely affect visual acuity, resulting in a significant loss of depth and distance perceptions.

68.  The continued service and provision of alcohol to Plaintiff after he was visibly intoxicated was reckless under the circumstances.

69.  The continued service and provision of alcohol to Lindsey O'Connell after she was visibly intoxicated was reckless under the circumstances.

70.  Hooligans and its bartender Sean Daley knew or reasonably should have known that Lindsey O'Connell was

intoxicated when Daley continued to serve alcoholic beverages to her on October 20, 2008.

71.   Hooligans and its bartender Sean Daley knew or reasonably should have known that Plaintiff was intoxicated when Daley continued to serve alcoholic beverages to him on October 20, 2008.

72.   The wanton, reckless and/or negligent over-service of alcohol to Lindsey O'Connell by Defendants was a substantial contributing cause of Plaintiff's injuries.

73.   The willful, wanton, and/or reckless over-service of alcohol to Plaintiff by Defendants was a substantial contributing cause of Plaintiff's injuries.

## CAUSES OF ACTION

### COUNT I

74.   Plaintiff restates and realleges each of the foregoing paragraphs as if fully set forth herein.

75.   Hooligans, Inc., by its negligence and/or willful, wanton and reckless conduct caused the injury and/or was a substantial contributing cause of the injuries suffered by Plaintiff.

76.   Among other things, on October 20, 2008 Hooligans, Inc., owed a duty to observe Lindsey O'Connell's state of intoxication, refrain from serving alcohol to Lindsey O'Connell in amounts causing her to become intoxicated, and to refrain

from serving any alcohol to Lindsey O'Connell once she had
become intoxicated.

77.   Hooligans, Inc. knowingly, willfully, wantonly,
recklessly and/or negligently breached its duty by, among other
things, serving alcoholic beverages to Lindsey O'Connell after
it knew or reasonably should have known that she was
intoxicated.

78.   By and through its agents, servants, representatives
and/or employees, Hooligans, Inc. violated the provisions of
Mass. G.L. 138, §69 by, among other things, serving alcoholic
beverages to Lindsey O'Connell on the premises after it knew or
reasonably should have known that she was intoxicated

79.   It was reasonably foreseeable that a serious accident
and injury could result from the service of alcohol to Lindsey
O'Connell after she became intoxicated on October 20, 2008.

80.   Among other things, it was reasonably foreseeable to
Hooligans, Inc. on October 20, 2008 that (a) an intoxicated
patron who departed Hooligans may operate a motor vehicle on
Blossom Street in Fitchburg, Massachusetts adjacent to
Hooligans' parking lot after such patron had become intoxicated
from consuming alcohol; (b) such intoxication would impair the
patron's ability to operate a motor vehicle in a safe, careful
and trouble-free manner; and (c) such impairment due to

intoxication would lead to an accident such as the one described in this Complaint.

81.  Plaintiff's injuries were directly and proximately caused by the willful, wanton, reckless and/or negligent actions and omissions of Hooligans, Inc. on October 20, 2008.

82.  Due to the carelessness, recklessness and negligence of Hooligans, Inc., Plaintiff, Alex Baldwin, was caused to suffer and continues to suffer permanent injuries, great physical and mental pain, and shock and anguish deriving from his injuries.  The injuries required Plaintiff to obtain medical treatment causing Plaintiff to incur vast expenses for that medical treatment.  The injuries have prevented Plaintiff from attending to his usual affairs, activities and occupations, to his financial loss and damage.

## COUNT II

83.  Plaintiff restates and realleges each of the foregoing paragraphs as if fully set forth herein.

84.  Hooligans, Inc., by its willful, wanton and/or reckless conduct caused the injury and/or was a substantial contributing cause of the injuries suffered by Plaintiff.

85.  Among other things, on October 20, 2008 Hooligans, Inc., owed a duty to observe Plaintiff's state of intoxication, refrain from serving alcohol to Plaintiff in amounts causing him

to become intoxicated, and to refrain from serving any alcohol
to Plaintiff once he had become intoxicated.

86.  Hooligans, Inc. knowingly, willfully, wantonly, and/or
recklessly breached its duty by, among other things, serving
alcoholic beverages to Plaintiff after it knew or reasonably
should have known that he was intoxicated.

87.  By and through its agents, servants, representatives
and/or employees, Hooligans, Inc. violated the provisions of
Mass. G.L. 138, §69 by, among other things, willfully, wantonly,
and/or recklessly serving alcoholic beverages to Plaintiff on
the premises after it knew or reasonably should have known that
he was intoxicated.  Under these circumstances, the provisions
of Mass. G.L. 231, §85T do not bar the maintenance of the
instant action for personal injuries and consequential damages,
as expressed in this Count of the Complaint.

88.  It was reasonably foreseeable that a serious accident
and injury could result from the service of alcohol to Plaintiff
after he became intoxicated on October 20, 2008.

89.  Among other things, it was reasonably foreseeable to
Hooligans, Inc. on October 20, 2008 that (a) an intoxicated
patron who departed Hooligans may become a pedestrian on Blossom
Street in Fitchburg, Massachusetts adjacent to Hooligans'
parking lot after such patron had become intoxicated from
consuming alcohol; (b) such intoxication would impair the

patron's judgment and self-control and cause a diminution in his normal sense of caution and self-restraint; (c) such intoxication would cause motor impairments such as staggering walk, unsteady balance, and significant deterioration in muscular coordination; and (d) such impairment due to intoxication would lead to an accident such as the one described in this Complaint.

90.  Plaintiff's injuries were directly and proximately caused by the willful, wanton, and/or reckless actions and omissions of Hooligans, Inc. on October 20, 2008.

91.  Due to the willful, wanton, and/or reckless conduct of Hooligans, Inc., Plaintiff, Alex Baldwin, was caused to suffer and continues to suffer permanent injuries, great physical and mental pain, and shock and anguish deriving from his injuries. The injuries required Plaintiff to obtain medical treatment causing Plaintiff to incur vast expenses for that medical treatment.  The injuries have prevented Plaintiff from attending to his usual affairs, activities and occupations, to his financial loss and damage.

## COUNT III

92.  Plaintiff restates and realleges each of the foregoing paragraphs as if fully set forth herein.

93.  Defendant Erika Kirby, individually, and/or by and through her corporation Hooligans, Inc., owned the liquor

license for the premises in question and permitted violations of the liquor laws of the State of Massachusetts to occur on the licensed premises, which resulted in serious, permanent injuries to Plaintiff.

94.   Erika Kirby, individually, and/or by and through her corporation, Hooligans, Inc., by her negligence and/or wanton and reckless conduct caused the injury and/or was a substantial contributing cause of the injuries suffered by Plaintiff.

95.   Among other things, on or before October 20, 2008 Erika Kirby and Hooligans, Inc. owed a duty (1) to observe and comply with the liquor laws of the State of Massachusetts and to avoid violations of same; (2) to exercise due care in the selection and hiring of liquor servers and to avoid hiring, and to terminate from employment, persons whom she knew or reasonably should have known were unfit for that purpose and/or posed a danger to patrons of the tavern; and (3) to exercise due care in the training and supervision of liquor servers so as to ensure that individual liquor servers (a) track, within reasonable limits, the amounts of alcohol served to individual patrons, (b) understand the amounts of alcohol it is safe to serve an individual over a given period of time, and (c) reasonably detect and observe the signs and symptoms of alcohol intoxication.

96. Erika Kirby, individually, and/or by and through her corporation Hooligans, Inc., knowingly, willfully, wantonly, recklessly and/or negligently breached her duty by, among other acts or omissions, (1) allowing persons to serve liquor to patrons at Hooligans after they knew or reasonably should have known that said patrons were intoxicated; (2) hiring and failing to terminate Sean Daley from employment after she knew or reasonably should have known that he was unfit for that purpose by reason of his carelessness, immaturity and/or poor judgment, and that he posed a danger to patrons and the public by his habitual over-service of alcoholic beverages to intoxicated persons; and (3) her failure to implement reasonable control measures at the point of sale or to conduct any training or supervision of liquor servers so as to ensure that they (a) track, within reasonable limits, the amounts of alcohol served to individual patrons, (b) understand the amounts of alcohol it is safe to serve an individual over a given period of time, and (c) reasonably detect and observe the signs and symptoms of alcohol intoxication.

97. It was reasonably foreseeable that a serious accident and injury could result from the service of alcohol to Plaintiff and to Lindsey O'Connell after they became intoxicated on October 20, 2008. It was also reasonably foreseeable that the aforementioned negligent hiring, supervision and training of

employees, including Sean Daley, could result in service of alcohol to intoxicated persons, who could then become involved in such serious accidents as a result.

98. Among other things, it was reasonably foreseeable to Erika Kirby and Hooligans, Inc. on October 20, 2008 that (a) an intoxicated patron who departed Hooligans may operate a motor vehicle on Blossom Street in Fitchburg, Massachusetts adjacent to Hooligans' parking lot after such patron had become intoxicated from consuming alcohol; (b) such intoxication would impair the patron's ability to operate a motor vehicle in a safe, careful and trouble-free manner; and (c) such impairment due to intoxication would lead to an accident such as the one described in this Complaint.

99. Plaintiff's injuries were directly and proximately caused by the willful, wanton, reckless and/or negligent actions and omissions of Erika Kirby, individually, and/or by and through her corporation Hooligans, Inc. on October 20, 2008.

100. Due to the carelessness, recklessness and negligence of Erika Kirby, individually, and/or by and through her corporation Hooligans, Inc., Plaintiff, Alex Baldwin, was caused to suffer and continues to suffer permanent injuries, great physical and mental pain, and shock and anguish deriving from his injuries. The injuries required Plaintiff to obtain medical treatment causing Plaintiff to incur vast expenses for that

medical treatment.  The injuries have prevented Plaintiff from attending to his usual affairs, activities and occupations, to his financial loss and damage.

<b><u>COUNT IV</u></b>

101. Plaintiff restates and realleges each of the foregoing paragraphs as if fully set forth herein.

102. Defendant Erika Kirby, individually, and/or by and through her corporation Hooligans, Inc., owned and controlled the building located at 29 Blossom Street in Fitchburg, Massachusetts, and owned and controlled its licensed premises.

103. As a result of the negligence of the Defendant Erika Kirby, individually, and/or by and through her corporation Hooligans, Inc. in permitting the conduct enumerated in this Complaint, Plaintiff sustained serious, permanent personal injuries.

104. Plaintiff was a business invitee of Defendant Erika Kirby, individually, and/or by and through her corporation Hooligans, Inc.

105. Defendant Erika Kirby, individually, and/or by and through her corporation Hooligans, Inc., owed Plaintiff a duty to keep the premises in a safe condition and to exercise proper care in preventing dangerous and hazardous conditions to exist, and was otherwise negligent in the premises.

106. Erika Kirby, individually, and/or by and through her corporation Hooligans, Inc., knowingly, willfully, wantonly, recklessly and/or negligently breached her duty by, among other acts or omissions, allowing persons to serve liquor to patrons at Hooligans after they knew or reasonably should have known that said patrons were intoxicated, allowing violations of the liquor laws of the State of Massachusetts, failing to ensure that intoxicated persons leaving the establishment did not operate a motor vehicle, and failing to ensure that persons leaving Hooligans, after having been provided with alcohol there, did not engage in dangerous and injurious conduct in its parking lot and on the sidewalk and street immediately adjacent to the premises.

107. Plaintiff's injuries were directly and proximately caused by the willful, wanton, reckless and/or negligent actions and omissions of Erika Kirby, individually, and/or by and through her corporation Hooligans, Inc. on October 20, 2008.

108. Due to the carelessness, recklessness and negligence of Erika Kirby, individually, and/or by and through her corporation Hooligans, Inc., Plaintiff, Alex Baldwin, was caused to suffer and continues to suffer permanent injuries, great physical and mental pain, and shock and anguish deriving from his injuries.  The injuries required Plaintiff to obtain medical treatment causing Plaintiff to incur vast expenses for that

medical treatment.  The injuries have prevented Plaintiff from attending to his usual affairs, activities and occupations, to his financial loss and damage.

## COUNT V

109. Plaintiff restates and realleges each of the foregoing paragraphs as if fully set forth herein.

110. Sean Daley, by his negligence and/or willful, wanton and reckless conduct caused the injury and/or was a substantial contributing cause of the injuries suffered by Plaintiff.

111. Among other things, on October 20, 2008 Sean Daley owed a duty to observe Lindsey O'Connell's state of intoxication, to refrain from serving alcohol to Lindsey O'Connell in amounts causing her to become intoxicated, and to refrain from serving any alcohol to Lindsey O'Connell once she had become intoxicated.

112. Sean Daley knowingly, willfully, wantonly, recklessly and/or negligently breached his duty by, among other things, serving alcoholic beverages to Lindsey O'Connell after he knew or reasonably should have known that she was intoxicated.

113. Sean Daley violated the provisions of Mass. G.L. 138, §69 by, among other things, serving alcoholic beverages to Lindsey O'Connell on the premises after he knew or reasonably should have known that she was intoxicated.

114. It was reasonably foreseeable that a serious accident and injury could result from the service of alcohol to Lindsey O'Connell after she became intoxicated on October 20, 2008.

115. Among other things, it was reasonably foreseeable to Sean Daley on October 20, 2008 that (a) an intoxicated patron who departed Hooligans may operate a motor vehicle on Blossom Street in Fitchburg, Massachusetts adjacent to Hooligans' parking lot after such patron had become intoxicated from consuming alcohol; (b) such intoxication would impair the patron's ability to operate a motor vehicle in a safe, careful and trouble-free manner; and (c) such impairment due to intoxication would lead to an accident such as the one described in this Complaint.

116. Plaintiff's injuries were directly and proximately caused by the willful, wanton, reckless and/or negligent actions and omissions of Sean Daley on October 20, 2008.

117. Due to the carelessness, recklessness and negligence of Sean Daley, Plaintiff, Alex Baldwin, was caused to suffer and continues to suffer permanent injuries, great physical and mental pain, and shock and anguish deriving from his injuries. The injuries required Plaintiff to obtain medical treatment causing Plaintiff to incur vast expenses for that medical treatment.  The injuries have prevented Plaintiff from attending

to his usual affairs, activities and occupations, to his financial loss and damage.

**COUNT VI**

118. Plaintiff restates and realleges each of the foregoing paragraphs as if fully set forth herein.

119. Sean Daley, by his willful, wanton and/or reckless conduct caused the injury and/or was a substantial contributing cause of the injuries suffered by Plaintiff.

120. Among other things, on October 20, 2008 Sean Daley owed a duty to observe Plaintiff's state of intoxication, refrain from serving alcohol to Plaintiff in amounts causing him to become intoxicated, and to refrain from serving any alcohol to Plaintiff once he had become intoxicated.

121. Sean Daley knowingly, willfully, wantonly, and/or recklessly breached his duty by, among other things, serving alcoholic beverages to Plaintiff after he knew or reasonably should have known that Plaintiff was intoxicated.

122. Sean Daley violated the provisions of Mass. G.L. 138, §69 by, among other things, willfully, wantonly, and/or recklessly serving alcoholic beverages to Plaintiff on the premises after he knew or reasonably should have known that Plaintiff was intoxicated.  Under these circumstances, the provisions of Mass. G.L. 231, §85T do not bar the maintenance of

the instant action for personal injuries and consequential damages, as expressed in this Count of the Complaint.

123. It was reasonably foreseeable that a serious accident and injury could result from the service of alcohol to Plaintiff after he became intoxicated on October 20, 2008.

124. Among other things, it was reasonably foreseeable to Sean Daley on October 20, 2008 that (a) an intoxicated patron who departed Hooligans may become a pedestrian on Blossom Street in Fitchburg, Massachusetts adjacent to Hooligans' parking lot after such patron had become intoxicated from consuming alcohol; (b) such intoxication would impair the patron's judgment and self-control and cause a diminution in his normal sense of caution and self-restraint; (c) such intoxication would cause motor impairments such as staggering walk, unsteady balance, and significant deterioration in muscular coordination; and (d) such impairment due to intoxication would lead to an accident such as the one described in this Complaint.

125. Plaintiff's injuries were directly and proximately caused by the willful, wanton, and/or reckless actions and omissions of Sean Daley on October 20, 2008.

126. Due to the willful, wanton, and/or reckless conduct of Sean Daley, Plaintiff, Alex Baldwin, was caused to suffer and continues to suffer permanent injuries, great physical and mental pain, and shock and anguish deriving from his injuries.

The injuries required Plaintiff to obtain medical treatment causing Plaintiff to incur vast expenses for that medical treatment.  The injuries have prevented Plaintiff from attending to his usual affairs, activities and occupations, to his financial loss and damage.

## COUNT VII

127. Plaintiff restates and realleges each of the foregoing paragraphs as if fully set forth herein.

128. The defendants designated as ABC Corporation I–V and John Doe I–V are corporations and/or individuals unknown to the Plaintiff who own the premises located at 29 Blossom Street, Fitchburg, Massachusetts and/or exercise ownership or control over Hooligans, Inc.

129. These defendants represent fictitious and unknown persons or entities whose conduct may have been a proximate and substantial cause of the injuries to Plaintiff due to their reckless, willful, wanton, and/or negligent provision of alcoholic beverages to intoxicated persons, violation of the liquor laws of the State of Massachusetts, or failure to keep the premises in a safe condition and/or to exercise proper care in preventing dangerous and hazardous conditions to exist, and who were otherwise negligent in the premises.

130. As a direct result of the negligence of the defendants so designated in this Complaint, Plaintiff sustained severe,

permanent personal injuries, suffered pain and disability, required hospital and medical care and treatment, was prevented from attending to his usual occupation and affairs, and was otherwise damaged.

**WHEREFORE**, Plaintiff hereby requests that this Honorable Court:

1.    Enter judgment in his favor on each count of this Complaint;

2.    Award all damages to which Plaintiff is entitled, including compensatory damages, punitive damages, reasonable attorneys fees, interests and costs;

3.    Award all damages allowed under the Rules of this Court and Massachusetts law; and

4.    Award such other and further relief as is just, proper and equitable.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all counts so triable.

Respectfully submitted,

*/s/ Martin P. Duffey, Esquire*
Martin P. Duffey, Esquire BBO # 674512
Cozen O'Connor
1900 Market Street
Philadelphia, PA 19103
Tele: 215-665-2780/Fax: 215-701-2480
Email: mduffey@cozen.com

Dated: August 18, 2010